Alexis D. Malone SBN 236356
Law Office of Alexis D. Malone
333 Gellert Blvd. Suite 209
Daly City, CA 04015
Tel: 650-755-7000
Fax: 650-745-4252
adm@lexilaw.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>MICHAEL C. and KATHLEEN E. BURWELL-<br>    CALLERO<br><br>Address:<br>1649 Aylesbury Way<br>Roseville, CA 95747<br><br>Last four digits<br>of Social Security:   ****0338<br>                           ****5762 | Case No.: 09-61448<br>Chapter 7<br><br>MOTION FOR CONTEMPT AGAINST BAYVIEW LOAN SERVICING, LLP FORVIOLATION OF DEBTOR'S DISCHARGE IN THE ABOVE REFERENCED CASE<br><br>HEARING SCHEDULED:<br>Hon. Stephen L. Johnson<br>Date: September 11, 2013<br>Time: 2:00pm<br>Courtroom: 3099<br>280 South First Street<br>San Jose, CA 95113 |

      Alexis D. Malone of the Law Office of Alexis D. Malone, on behalf of Michael C. and Kathleen E. Burwell-Callero, the Debtors herein, file this motion requesting the Court to find Bayview Loan Servicing, LLP (hereinafter Bayview) in civil contempt under 11 U.S.C. § 105 and Federal Rules of Bankruptcy 9014 and 9020 for repeated violations of the discharge injunction as found in 11 U.S.C. §524 (a)(1)-(2).

1

## PARTIES

1. Debtors filed under Chapter 7 of Title 11 of the United States Bankruptcy Code in case 09-61448 in the Northern District of California. Debtors reside in Santa Rosa California.

2. Collection creditor Bayview Loan Servicing, LLP on information and belief does business in the state of California and in the state of Florida at 4425 Ponce de Leon Blvd., Coral Gables, FL 33146. The company's subsidiaries include Bayview Asset Management, LLC, Bayview Loan Servicing, LLC, and Bayview Lending Group LLC.

## FACTS

1. On or about November 14, 2006, Debtors executed a promissory note in the amount of $848,000.00 in favor of Bank of America, (the Note 1) in conjunction with a mortgage loan obtained by Debtors and secured by real property located at 1993 Garmish Court, South Lake Tahoe, California, 96150 (the Loan 1).

2. On or about January 31, 2007, Debtor Michael Burwell- Callero executed a promissory note in the amount of $64,000.00 in favor of Bank of America, (the Note 2 and with Note 1 collectively, the Notes) and secured by real property located at 1993 Garmish Court, South Lake Tahoe, CA 96150. (The Loan 2 and with Loan 1 collectively the Loans).

3. On or about July 2, 2009, Debtors sold the property at 1993 Garmish Court, South Lake Tahoe, CA 96150, via short sale to a third party with a deficiency of $848,000.00 owed to Bank of America on Loan 1. In addition to the first mortgage, Debtors also incurred a deficiency of $63,752.00 in an unpaid second mortgage, Loan 2, also owed to Bank of America. The deficiencies constituted the Garmish Debt.

4. On December 31, 2009, Debtors filed the instant Chapter 7 case in the U.S. Bankruptcy Court, Northern District of California.

5. The bankruptcy petition identified and scheduled both loan deficiencies on Schedule F.

6. Debtors received their discharge June 14, 2010.

7. Subsequent to the discharge, Bank of America transferred service of $848,000 of the Garmish Debt to Bayview Loan Servicing, LLP (hereinafter Bayview) for collection.

8. Both Bank of America and Bayview continued attempts to collect the Garmish Debt.

9. On March 23, 2012, Debtors filed a motion to reopen their Chapter 7 case to prosecute the discharge violations.

10. On April 26, 2012, an Order to Reopen the case was filed in the Bankruptcy proceeding.

11. On May 10, 2012, Debtors filed a Motion for Contempt and Damages Against Bank of America, NA, Doing Business as Bank of America Home Loans Servicing, LP, Bayview Loan Servicing LLC (sic) and for Declaratory and Injunctive Relief.

12. On or about August 24, 2012, Bank of America, N.A., Bayview, and Debtors stipulated to terms for dismissal of the Complaint.

13. This Court granted the Order Dismissing the Complaint September 25, 2012.

14. Terms of the settlement agreement included in relevant part:

   1. "Respondents will cease any and all collection attempts against Debtors of any debt discharged in the Bankruptcy Proceeding. Subsequent to execution of this Agreement by the Parties, Debtor's Counsel shall notify …Bayview's Counsel of any attempts against Debtors by Bayview to collect any debt discharged in the Bankruptcy Proceeding and provide Respondents an opportunity to investigate and cure the source of the collection attempt within 30 days prior to prosecuting the collection attempt as a new and separate discharge violation." Terms and Releases, Part 1. Settlement Provisions, Paragraph C. (See Exhibit A, a true and correct copy of the Settlement Agreement and Release, Terms and Releases, Part 1 Settlement Provisions, Paragraph C attached here and made a part hereof.).

   2. "Bayview will electronically notify the major credit reporting agencies to which it furnished information about the Loan and that the Loan was discharged in the Bankruptcy Proceeding." Terms and Releases, Part 1, Settlement Provisions, Paragraph F. (See Exhibit A, *supra*.).

## A. THE BANKRUPTCY COURT SHOULD FIND BAYVIEW IN CONTEMPT FOR VIOLATIONS OF THE DISCHARGE INJUNCTION

15. Bankruptcy courts have the power to impose civil contempt. *See Caldwell v. Unified Capital Corp. (In re: Rainbow Magazine, Inc.),* 77 F.3d 278, 284-85 (9th Cir. 1996). The bankruptcy court is authorized to exercise civil contempt power via 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title provide for the raising of any issue by a party in interest shall be construed to preclude the court from *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent and abuse of process. See 11 U.S.C. § 105(a); *see also Hansbrough v Birdsell (In re: Hercules Enterprises, Inc),* 387 F. 3d 1024 (9th Cir. 2004). Rule 9020 of the Federal Rules of Bankruptcy Procedure explicitly provides for contempt proceedings, allowing a party in interest to file a motion for an order of contempt pursuant to Rule 9014. Fed. R. Bankr. P 9020 and 9014. *Collier on Bankruptcy,* § CS6.31 (15th Ed. 2005).

16. In the current case, the Court should find Bayview in civil contempt for the reasons discussed below.

**COUNT ONE:**
**BAYVIEW VIOLATED THE DEBTORS' DISCHARGE BY ISSUING A FALSE 1099-C FOR TAX YEAR 2012 TO THE INTERNAL REVENUE SERVICE CLAIMING THAT BAYVIEW HAD 'CANCELLED' DEBTORS' PREVIOUSLY DISCHARGED DEBT TO BANK OF AMERICA**

17. U.S.C. 11 Section 524 states:
> (a) A discharge under in a case under this title (1) voids any judgment at any time obtained to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727,944,1141,1228, or 1328 of this title, whether or not discharge of such debt is waived; (2) operates as an injunction against the commencement or continuation of an action the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such a debt is waived.

18. Knowledge of the discharge order and knowingly violating it are necessary requirements for contempt. *Matter of Holland*, 21 B.R. 397, 400-401 (Bankr. N.D. Ga. 1981).

19 "The standard for finding a party in civil contempt is well settled: The moving party has the burden of

showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." See *Knupfer v. Lindbalde (in re Dyer)*, 322 F.3d 1178,1190-91 (9th Cir. 2002) citing *Renwich v. Bennett (In re: Bennett)*, 298 F. 3rd, 1059, 1060 (9th Cir. 2002).

### 1. BAYVIEW HAD KNOWLEDGE OF THE DEBTORS' DISCHARGE OF THE DEBT

20. Debtor's discharge injunction was effective June 14, 2010 by an order of this Court.

21. When Bayview began collection attempts against the discharged Garmish Debt for $848,000, Bayview was notified of the discharge by mail December 7, 2011. On March 23, 2012, Debtors' Motion to Reopen, served on Bayview, cited that the case was being reopened to prosecute, *inter alia*, Bayview's violation of the discharge.

22. On April 5, 2012, Debtor brought a Motion for Contempt and Discharge Violation against Bayview and Bank of America for continuing collection attempts on this discharged debt.

23. On or about August 24, 2012 Bayview, Bank of America and Debtors stipulated to dismissal of the complaint conditioned on terms that called for, *inter alia*, Bayview to stop all collection efforts on the discharged debt.

24. In the terms of the stipulated agreement, Bayview acknowledged the debt to have been discharged in bankruptcy. (See Exhibit A, *supra*.).

### 2. BAYVIEW WILLFULLY ISSUED A FALSE 1099-C TO THE INTERNAL REVENUE SERVICE

25. Despite knowledge that the debt was discharged in bankruptcy in 2010, Bayview issued to the Internal Revenue Service on behalf of Debtor and to Debtor, a Form 1099-C Cancellation of Debt for tax year 2012. Date of the "identifiable event" (the date the debt was purportedly cancelled) is listed in Box 1 as 7/31/2012. The amount of debt "cancelled" is listed as $312,872.00; the property against which the debt is cancelled is identified as 1993 Garmish Court, the short sale property whose deficiency was discharged in 2010. (See Exhibit B, a true and correct copy of the 1099-C is attached and made a part hereof.).

26. Issuance of this document was done willfully and with knowledge of the discharge of this debt in 2010.

27. Debtor's attorney notified Bayview's counsel of this breach February 6, 2012 and requested that Bayview issue a corrected 1099-C with the amount cancelled changed to 0. Debtor's counsel further explained that the 1099-C, as written, made Debtor liable for taxes on the "cancelled" debt: a debt that was in fact never cancelled by Bayview or owed to Bayview by Debtor. (See Exhibit C-1, a true and correct copy of email correspondence is attached and made a part hereof.).

28. On April 16, 2012, Debtor's counsel again emailed Bayview counsel requesting the correction. (See Exhibit C-2, a true and correct copy of email correspondence is attached and made a part hereof.).

29. On May 6, 2012, Debtor's counsel again wrote to Bayview's counsel requesting action. (See Exhibit C-3, a true and correct copy of email correspondence and letter to Bayview is attached and made a part hereof.).

30. On May 27, 2012, Debtor's counsel advised Bayview's counsel of Debtor's change of address. (See Exhibit C-4, a true and correct copy of email correspondence is attached and made a part hereof.).

31. On June 3, 2012, Debtor's counsel again consulted with Bayview's counsel to advise him that the debt had been cancelled by Bank of America in tax year 2009: a copy of that 1099-C was provided. (See Exhibit C-5, a true and correct copy of email correspondence and 2009 1099-C is attached and made a part hereof.).

32. On or about June 6, 2012, Debtor's counsel spoke with Bayview counsel to cordially request an update. We have had no update as of this date.

### 3. BAYVIEW HAS KNOWN OF THIS VIOLATION SINCE FEBRUARY 6, 2012; DESPITE DEBTOR'S REPEATED REQUESTS FOR CORRECTION NONE HAS BEEN FORTHCOMING.

33. The Court should find Bayview in contempt for knowingly and willfully continuing to claim they were owed the Garmish Debt in July 2012 and for claiming that they had cancelled the debt thereby incurring a tax liability for Debtor with the Internal Revenue Service.

34. Bayview violated both the terms of the original discharge order and the terms of the second Order to Dismiss pursuant to the terms of the stipulated agreement issued September 25, 2012 by continuing to claim in a false 1099-C, issued in February 2013, that funds were owed to them in 2012 and that the discharged debt had been cancelled by them in 2012.

**COUNT TWO:**

**BAYVIEW SHOULD BE FOUND IN CONTEMPT FOR VIOLATING THE ORIGINAL DISCHARGE ORDER AND FOR VIOLATING THIS COURT'S ORDER ISSUED SEPTEMBER 25, 2012 DISMISSING DEBTORS' MOTION FOR CONTEMPT AND DAMAGES PURSUANT TO TERMS OF STIPULATED BY BAYVIEW.**

1. **BAYVIEW'S FAILURE TO NOTIFY THE CREDIT REPORTING AGENCIES (CRA'S) THAT THE DEBT HAD BEEN DISCHARGED IN BANKRUPTCY PURSUANT TO THE STIPULATED DISMISSAL AGREEMENT EXECUTED AUGUST 24, 2012 AND ORDERED BY THE COURT SEPTEMBER 25, 2012 IS CONTEMPT.**

35. Debtor repeats and re-pleads each and every allegation contained in the First Count of this Motion for Contempt and incorporated the same herein by reference as if more fully set forth at length to avoid unnecessary repetition.

36. Bayview stipulated and this Court so ordered on September 25, 2012, the following:

    "Bayview will electronically notify the major credit reporting agencies to which it furnished information about the Loan and that the Loan was discharged in the Bankruptcy Proceeding." Terms and Releases, Part 1, Settlement Provisions, Paragraph F. (See Exhibit A, *supra.*).

37. This stipulated settlement term was incorporated into this Court's Order Dismissing Complaint for Damages, Contempt Against Bank of America, N.A., Doing Business as Bank of America Home Loans Servicing, LP, Bayview Loan Servicing, LLC and for Declarative and Injunctive Relief, "Pursuant to the Stipulation."

38. Bayview had knowledge of this Order.

39. Bayview, further, had knowledge that the original debt, which was the basis of the underlying Motion, was discharged by the bankruptcy court order June 14, 2010.

40. Despite knowledge of the September 25 order, Bayview failed to perform the action required: Bayview did not notify the Credit Reporting Agencies that the debt had been discharged in bankruptcy.

41. Bayview, by failing to correct the information as ordered, violated the both the original discharge and the subsequent Court order.

42. Upon discovery that Bayview was still reporting the debt as 180 days past due as of August 2012, Debtor's attorney noticed creditor's counsel of the violation. (See Exhibits D, a true and correct copy of email correspondence is attached and made a part hereof and Exhibit E a true and correct copy of Experian credit report attached and made a part hereof.).

 2.   **DEBTORS' COUNSEL COMPLIED WITH THE NOTICE**

43. Terms of the settlement further provide that:

> Respondents will cease any and all collection attempts against Debtors of any debt discharged in the Bankruptcy Proceeding. Subsequent to execution of this Agreement by the Parties, Debtors' Counsel shall notify … (other parties omitted) Bayview's Counsel of any attempts against Debtors by Bayview to collect any debt discharged in the Bankruptcy Proceeding and provide Respondents an opportunity to investigate and cure the source of the collection attempt within 30 days prior to prosecuting the collection attempt as a new and separate discharge violation." Terms and Releases, Part 1. Settlement Provisions, Paragraph C.  (See Exhibit A, *supra*.).

44. On July 25, 2013 Debtor's counsel noticed creditor's counsel that Debtor's credit report was showing, as of that date, that the debt was still owed to Bayview and that the debt was over six months delinquent.  (See Exhibit D, *supra*.).

45. Because of this adverse credit rating, Debtor was denied a home mortgage.

46. Debtor's counsel has met the requirements of thirty day notice prior to filing the instant motion.

**B. UPON MAKING A FINDING OF CIVIL CONTEMPT, THE BANKRUPTCY COURT SHOULD SANCTION THE CONTEMNOR BAYVIEW.**

   1. **Sanctions of $100.00 Per Day Per Count Should Be Ordered to Coerce Compliance with the Court's Order.**

47. As stated above, Bayview has failed to comply with the clear and definite order of the Court and therefore should be found in civil contempt and sanctioned. Once a party is found in contempt of court, the Court may exercise wide discretionary power in issuing sanctions against Bayview. In its plain language, § 105(a) of the Bankruptcy Code grants bankruptcy courts such discretion. See 11 U.S.C. § 105 (a); *see also Hansbrough v. Birdsell (In re Hercules enterprises, Inc.)*, 387 F. 3rd 1024 (9th Cir. 2004) (Holding that bankruptcy court had authority under 11 U.S.C. § 105(a) to sanction debtor under civil contempt power, for debtor's failure to comply with bankruptcy court's order to turn over property; debtor was sanctioned $20,883 in trustee's fees and costs).

48. "If the sanction is intended to coerce the contemnor to comply with the court's orders in the future, and the sanction is conditioned upon continued noncompliance, it is civil." *Richmark Corp. v.Timber Falling Consultant,* 959 F.2 1468, 1481 (CA 9 1992).

49. In Count One, Bayview has been in contempt five months, beginning thirty days after Bayview's counsel was given notice of the violation and requested a correction. Continued refusal to correct the false document has already caused Debtor to file a tax extension for tax year 2012; if the document is not corrected by October 15, 2013, Debtor will have the burden of legally disproving the validity of the document with the IRS.

50. In Count Two, Bayview has been in contempt since September 25, 2012, or approximately nine months beginning thirty days after the order. Because of Bayview's contempt, Debtor has been unable to rebuild his credit and most recently was denied an opportunity to contract a mortgage. Every month in which the error is not corrected with the CRA's, Debtor's fresh start is delayed.

### 2. Sanctions should made to include two years of professional credit monitoring purchased on behalf of Debtor by Bayview.

51. In Count Two, Bayview has failed for nearly a year to meet its obligation to correct their credit reporting of the debt. Because this has adversely affected Debtor's credit rating, Debtor is requesting that Bayview pay for professional credit monitoring with a firm specializing in credit rehabilitation that will help Debtor achieve his long delayed fresh start.

### E. ATTORNEY FEES SHOULD BE AWARDED TO THE DEBTORS' COUNSEL

52. An award of attorney's fees is an appropriate sanction under the Court's civil contempt powers. *See, e.g. In re Statsz,* 387 B.R. 271, 276-77 (9th Cir. B.A.P. 2008)(finding that bankruptcy court's award of attorney fees is an appropriate sanction under the court's civil contempt powers and does not constitute an abuse of discretion where debtor repeatedly refused to comply with the court's order to appear at a Rule 2004 examination.) The Debtor requests an award of attorney's fees incurred in bringing and prosecuting this Motion.

## CONCLUSION

53. Based on the foregoing, Bayview should be found in civil contempt and sanctioned accordingly. Bayview should also be ordered to pay Debtor's reasonable attorney feels.

WHEREFORE, the Debtor requests the Court grant this Motion and grant such other relief as the Court deems appropriate.

| | |
|---|---|
| July 29, 2013 | Respectfully submitted, |
| Daly City, California | */s/ Alexis D. Malone* |
| | Alexis D. Malone |
| | Attorney for Debtors |